# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | CASE NO. 1:24-CR-192 |
| Plaintiff, | : | |
| | : | JUDGE DAVID A. RUIZ |
| vs. | : | |
| | : | **DEFENDANT'S MOTION TO** |
| MITCHIRAL SMITH, | : | **SUPPRESS EVIDENCE** |
| | : | (Evidentiary Hearing Requested) |
| Defendant. | : | |

Mitchiral Smith now moves this Court to suppress evidence obtained as the result of an unlawful traffic stop. The traffic stop violated Mr. Smith's Fourth Amendment right against unreasonable search and seizures and all evidence obtained as a result of that stop must be suppressed.

## I. Factual background[1]

Lakewood Police Department Officer Billman took interest in the Dodge Durango that Mitchiral Smith was driving on October 30, 2023, at 4:36 a.m. Officer Billman claims the license plate on the rear of the Durango was obstructed by a tinted plate cover. Officer Billman then followed Mr. Smith until Mr. Smith entered the parking lot of an apartment building. Officer Billman parked his cruiser across the street from that parking lot so he could continue to watch the exit. Then, over the course of minutes, he followed Mr. Smith from W. 117th Street onto Detroit Avenue, then onto Hird Avenue, then onto to S. Lane Drive, without stopping Mr. Smith. While waiting in the parking lot, Officer Billman searched through footage captured by the city's surveillance cameras, known as Flock cameras. In doing so, Officer Billman identified the Dodge

---

[1] The facts detailed herein are solely taken from the Lakewood Police Department report and the dashcam and bodycam videos of Officer Billman, all of which were provided in discovery.

1

Durango Mr. Smith was driving. The camera technology that the City of Lakewood purchased from a third-party vendor is marketed as able to identify the characters on a license plate. While the Flock camera was unable to read the license plate number of the Durango, Officer Billman was able to do so by looking at the Flock camera photograph. Using that photograph, Officer Billman successfully determined the license plate to be an Ohio license plate with the number KBF3613. He checked the license plate through the Law Enforcement Automated Data System (LEADS), which came back validly registering the Dodge Durango to a holding company.

Officer Billman, as well as another officer in a second police cruiser, continued to watch the Durango, as it remained parked at the apartment complex. Both officers' cruisers were equipped with a video recording system. At 4:34 a.m., the Durango exited the apartment complex and approached the street. There are no cars anywhere on the street and no pedestrians to prevent the Durango from entering the roadway. The Durango visibly slows down as it exits the apartment complex and briefly stops before turning on to the street. Officer Billman immediately begins following the Durango and initiates a traffic stop by activating its overhead lights. Officer Billman's written report does not explicitly state why he initiated a traffic stop of Mr. Smith. After activating the overhead lights, Officer Billman continues to drive behind the Durango and reads the license plate number to dispatch. At 4:36 a.m., Mr. Smith brings his car to a stop at the side of the road with his four-way flashers activated.

Officer Billman's body camera recorded his interaction with Mr. Smith. When Officer Billman approaches the driver's door of the car, Mr. Smith is visibly taking his driver's license out of his wallet with the window already down. Mr. Smith also produces his rental agreement for the car. During the stop Officer Billman tells Mr. Smith that he was pulled over an obstructed license plate but later explains to Mr. Smith that he "could care less" about the obstructed plate and that

he is really concerned about drugs and guns. After a discussion, Officer Billman goes back to his cruiser, and a few minutes later returns to the Durango. At 4:45, about nine minutes after the stop began, without permission to leave, Mr. Smith drives off, leading to a chase by the officers. Mr. Smith's car was found minutes later at W. 107th Street; Mr. Smith was not found inside the car as he had fled on foot. Officer Billman began searching the Durango, finding a loaded Glock 27 .40 caliber semiautomatic handgun with an extended magazine on the front passenger seat, three crumpled $50 bills, four cellphones, a green Crown Royal bag with a digital scale, a plastic baggie with a white rock-like substance, a brown powder substance, and a folded lottery ticket.

**II.    Officer Billman's traffic stop of Mr. Smith violated his Fourth Amendment rights as Mr. Smith did not commit any traffic law violations.**

The Fourth Amendment protects "[t]he right of the people to be secure in their persons . . . against unreasonable searches and seizures." U.S. CONST. amend. IV. In general, a warrantless seizure is presumptively unreasonable and a violation of the Fourth Amendment. *United States v. Mathis*, 738 F.3d 719, 732 (6th Cir. 2013). This protection extends to all seizures, including traffic stops. *Whren v. United States*, 517 U.S. 806, 809-810 (1996). An "ordinary traffic stop is a seizure." *United States v. Blair*, 524 F.3d 740, 748 (6th Cir. 2008) (citing *Delaware v. Prouse*, 440 U.S. 648, 653 (1979)). Consequently, an officer must be reasonably justified to stop a car, and evidence seized during an unjustified stop usually "must be suppressed as 'fruit[ ] of the poisonous tree.' " *Id.* (quoting *United States v. Hill*, 195 F.3d 258, 264 (6th Cir. 1999)).

An investigatory stop of a motor vehicle is reasonable under the Fourth Amendment if an officer has probable cause to believe a traffic law violation has been occurred. *Whren*, 517 U.S. at 810. To have reasonable suspicion for a stop based on a traffic violation, "a police officer must know or reasonably believe that the driver of the car is doing something that represents a violation of the law." *United States v. Hughes*, 606 F.3d 311, 316 (6th Cir. 2010). Yet, here, there is no

evidence Mr. Smith committed a traffic violation under Ohio law that would support a traffic stop. If the validity of the stop or seizure rests on an alleged violation of only state law, then a reviewing court should turn to the state's highest court to interpret that law for guidance in ruling on the government's purported justification. *See United States v. Jones*, 479 F. App'x 705, 709-10 (6th Cir. 2012). "[I]f either the initial traffic stop or the scope and duration of the stop was unlawful, the evidence and statements obtained from that illegality must be excluded as 'fruit of the poisonous tree.'" *United States v. Gross,* 550 F.3d 578, 583 (6th Cir. 2008) (citing *Wong Sun v. United States,* 371 U.S. 471, 488 (1963)).

A. **Mitchiral Smith did not violate the Lakewood Ordinance requiring visible display of a car's license plate.**

As Mr. Smith did not violate the Lakewood Ordinance requiring visible display of a license plate, Officer Billman had no valid basis to initiate a traffic stop. The Lakewood Ordinance provides, in pertinent part:

> [n]o person who is the owner or operator of a motor vehicle shall fail to properly display in plain view on the front and rear of the motor vehicle the distinctive number and registration mark, including any county identification sticker and any validation sticker issued under Ohio Revised Code §§ 4503.19 and 4503.191, furnished by the Ohio Director of Public Safety . . . All license plates shall be securely fastened so as not to swing, and shall not be covered by any material that obstructs their visibility.

Lakewood City Ordinance 335.09(a).[2] There is little precedent on this specific Lakewood Ordinance, but the Ohio Revised Code contains a similarly-worded provision regarding the obstruction of license plates. *See* Ohio Revised Code § 4503.21.

---

[2] The ordinance can be found at:
*https://codelibrary.amlegal.com/codes/lakewood/latest/lakewood_oh/0-0-0-64076#JD_335.09*

The Sixth Circuit held in *United States v. Jones*, 479 F. App'x 705 (6th Cir. 2012), that if an officer determines that the license plate is visible and legible after initiating a traffic stop, but before engaging the driver, then there is no violation of Ohio Revised Code § 4503.21, and thus no valid basis to stop the driver. In *Jones*, the defendant was the passenger in a car, which drew the attention of a Cleveland police officer. The officers did not see "a visible license plate on the rear bumper," and therefore executed a traffic stop. *Jones*, 479 F. App'x at 707. While approaching the car, the officer did notice a rear plate, but because of the fog, the officer could not make out the numbers on the plate until he was less than twelve inches from the rear bumper, and with the assistance of his flashlight. *Id*. While the reason for the stop (not having any plate) no longer existed, the officer still believed the obstruction of the plate rendered it a traffic violation. When the driver could not produce his license, he was detained, and subsequently arrested, which led to the discovery of a firearm in the car. *Id.* The defendant's motion to suppress was denied by the Magistrate Judge. The Sixth Circuit reversed the denial of the motion to suppress.

The Court recognized the officer's initial stop was because he could not see any license plate on the car. *Jones*, 479 F. App'x at 709. However, because the officer was able to legibly read the plate, when he was less than a foot away and with the aid of a flashlight, there was no violation of Ohio Revised Code § 4503.21(a). *Id.* at 710. The Court found that while § 4503.21, "holds drivers responsible for properly affixing their license plates and keeping them free from obstructions, such as rust or tinted covers[,]" the statute "does not mandate the impossible and force drivers to be responsible for elements outside of their control, such as a poorly lit street or fog." *Id.* at 711 ((citing *State v. Cooke,* 1999 WL 778378 at *4 (Ohio Dist. App. 11, Sept. 24, 1999)). The Court also rejected the magistrate judge's alternative finding, that "even if [the officer] mistakenly believed that the temporary plate on Jones's vehicle violated § 4503.21, he had an

5

objectively reasonable belief that the driver violated the law and could lawfully approach the driver and ask the driver questions." *Id.* at 711-12. The Court concluded that because the officer was able to "read the temporary plate in its entirety before interacting with the driver," there was no support for any traffic violation and the traffic stop could not be continued. *Id.* at 712. And further there was no additional basis to justify the stop, and thus the stop was not objectively reasonable. The Court concluded, "[a]s Officer Jackson did not obtain independent reasonable suspicion that the vehicle was engaged in criminal activity after reading the plate, and Officer Jackson's belief that the temporary plate violated Ohio law was not objectively reasonable, the continued detention of the vehicle and subsequent search were unlawful." *Id*.

This Court can also be guided by Ohio law to interpret the bounds of the statute at issue. *See Meridian Mut. Ins. Co. v. Kellman,* 197 F.3d 1178, 1181 (6th Cir. 1999). In *Lakewood v. Shelton*, 2011 WL 3860510 (Ohio Dist. App. 8, Sep. 1, 2011), the Eighth District Court of Appeals addresses both the Lakewood Ordinance and Ohio Revised Code, § 4503.21(a). In *Shelton*, a Lakewood police officer testified that he observed a car and that "he could not clearly read the license plate because snow covered the plate." *Shelton*, 2011 WL 3860510 at *1. Therefore, relying on the Lakewood ordinance, the officer initiated a traffic stop. The officer testified that after the car stopped, he "was able to read the plate once he walked up to the car." *Id.* As a result of the stop, the defendant was arrested for driving under the influence. The trial court denied the defendant's motion to suppress, finding the officer has a reasonable basis for stopping the car because the license plate was obstructed. The Eighth District Court of Appeals reversed, finding the stop violated the defendant's rights under the Fourth Amendment.

The Court noted once the officer "got out of his own car and approached Shelton's car, he could read the license plate." *Shelton*, 2011 WL 3860510 at *4. The Court concluded "although

6

[the officer] testified that he could not read the entire license plate when he pulled Shelton over, he was able to read the plate once he got out of his own car and started to approach Shelton's car. Once he could read the license plate, he no longer had any reason to detain Shelton for an OVI investigation and should have sent him on his way." *Id.* Therefore, the Court reversed the denial of the motion to suppress.

In *State v. Chatton* (1984), 11 Ohio St.3d 59, the Ohio Supreme Court set forth standards as to when an officer can initiate a traffic stop when it is believed the car has no license plate or an obstructed license plate. *Chatton* specifically addressed Ohio Revised Code § 4503.21, which is analogous in all respects to the Lakewood ordinance at issue in this car. The Ohio Supreme Court held:

> [W]here a police officer stops a motor vehicle which displays neither front nor rear license plates, but upon approaching the stopped vehicle observes a temporary tag which is visible through the rear windshield, the driver of the vehicle may not be detained further to determine the validity of his driver's license absent some specific and articulable facts that the detention was reasonable. As a result, any evidence seized upon a subsequent search of the passenger compartment of the vehicle is inadmissible under the Fourth Amendment to the United States Constitution.

*Chatton*, 11 Ohio St.3d at 63.

The Ohio Eighth District Court of Appeals issued a similar holding in *State v. Lopez*, 2010 WL 2202890 (Ohio Dist. App. 8, Jun. 3, 2010). In *Lopez*, a Rocky River police officer was watching traffic and saw the defendant's car pass by but could not see a rear license plate. The officer followed Lopez's car and initiated a traffic stop. The officer testified when he stepped out of his patrol car, he could see Lopez's license plate – "a temporary Ohio license plate in the rear window mounted on top of the inside of the window." *Lopez*, 2010 WL 2202890 at *1. The officer believed that he initially didn't see the plate because of the angle and lighting conditions on the road. *Id.* The officer testified he initiated the traffic stop for violation of Rocky River Ordinance

335.09, which is identical to the Lakewood Ordinance at issue. During the stop, the officer determined Lopez was driving with a suspended license, for which he arrested Lopez; in searching the car, drugs and a scale were found. *Id.* Following *Chatton*, which the Court found was "directly on point," *id.* at *3, the Court held the officer did not have reasonable suspicion of criminal activity. *Id.* at *5. In applying both Ohio Revised Code § 4503.21 and Rocky River Ordinance 335.09, the Court found that because the officer could see the temporary tag, unobstructed, there was no violation of the statue.

Ohio case law is clear that even if an officer initially believes a license plate is obstructed, if the officer subsequently is able to read the license plate, then the reason for the stop has been extinguished and as there is no violation of the stature or ordinance the traffic stop must cease.

Similar to the cases detailed above, Officer Billman initially believed the license plate was obstructed, but later came to learn it was not. Officer Billman first noticed Mr. Smith's car, claiming the rear license plate was obstructed. He maintained watch over Mr. Smith's car as it entered an apartment complex, and consulted the city's Flock cameras to see what he could learn. In doing so, Officer Billman was able to view the license plate through the cameras and legibly determine all letters and numbers of the plate. He continued to monitor the area while the car remained in the apartment complex parking lot. When Mr. Smith left the apartment complex, Officer Billman initiated a traffic stop. Yet, when doing so, Officer Billman had already determined the plate could be read, by using the Flock cameras. His initial observation of believing the plate was obstructed had been proven to be in error as he had been able to visibly see the plate through the Flock cameras. Even after he activates his cruiser light, Officer Billman can be heard on his bodycam reading the license plate number to the dispatch officer.

In fact, below is a screenshot from Officer Billman's dashcam after Mr. Smith had stopped his car. Even with the glare to the dashcam from cruiser's lights, Mr. Smith's license is visible and unobstructed.



In accordance with the cases cited above, there was no violation of Ohio Revised Code § 4503.21(a) or the Lakewood Ordinance, and no justification for the traffic stop. Officer Billman had conclusively determined the license plate could be read even before initiating the traffic stop. These facts demonstrate that Officer Billman acted even more unreasonably in initiating a traffic stop as compared to the cases above. In *Jones*, suppression was required even though the officer could not visibly read the plate until he had already had the car stop and walked to within less than a foot of the rear bumper and needing to use his flashlight. Thus, *Jones* makes clear the officer's observations even after the initiation of a traffic stop can still render the stop unreasonable.

Following *Jones*, the officer's observations even before initiating the traffic stop, and determining the plate is legible, must render any later traffic stop unreasonable under the Fourth Amendment. Because there was no violation of the Lakewood Ordinance or Ohio Revised Code § 4503.21 for an obstructed license plate, there was no valid reason to initiate a traffic stop. Therefore, Mr. Smith's rights under the Fourth Amendment were violated requiring this Court to suppress the evidence discovered in the search of his car. *See supra*.

      **B.**    **Mitchiral Smith did not violate the law for failing to yield before entering the road.**

Mr. Smith did not violate the local ordinance or state law requiring cars to yield before making a turn onto a roadway. Lakewood Ordinance 331.22, entitled "driving onto roadway from place other than roadway: duty to yield," reads as follows: "[s]ubject to compliance with any traffic control device, the operator of a vehicle about to enter or cross a highway from an alley or from any place other than another roadway shall yield the right of way to all traffic approaching on the roadway to be entered or crossed."[3] There is a similarly worded state statute, Ohio Revised Code § 4511.44(a), which states, "The operator of a vehicle, streetcar, or trackless trolley about to enter or cross a highway from any place other than another roadway shall yield the right of way to all traffic approaching on the roadway to be entered or crossed."

These laws make clear that any driver that is "about to enter" the roadway, "shall yield the right of way to all traffic approaching on the roadway." Thus, the statute requires that someone leaving an apartment complex and entering the roadway must stop for any cars on the roadway. The text of the statute does not, however, indicate that a driver stop if there is no car approaching on the roadway. Thus, if there are no other cars on the roadway, the driver has no one to yield to

---

[3] The ordinance can be found at:
*https://codelibrary.amlegal.com/codes/lakewood/latest/lakewood_oh/0-0-0-63335*

10

and has no duty to yield. There is no Sixth Circuit case law on the scope of this statute, but the Ohio appellate courts have provided guidance. In *State v. Young*, 50 Ohio App.3d 17, 18 (Ohio App. Dist. 3, Jul. 14, 1988), the Court held, "in order to find defendant guilty of the criminal violation of [Ohio Revised Code §] 4511.44, it is necessary to find that defendant failed to yield to a vehicle proceeding uninterruptedly in a lawful manner because those are the elements of the offense."

Following *Young* and the plain reading of the statute, Mr. Smith did not violate Lakewood Ordinance 331.22 or Ohio Revised Code § 4511.44. At 4:34 a.m., Officer Billman was parked on the side of the street, watching the apartment complex where Mr. Smith's car was. His dashcam captures Mr. Smith leaving the apartment complex. At 4:35:35, the dashcam shows Mr. Smith's car departing the apartment complex and the entire road is barren of any other traffic. There are no other cars on the road. Nonetheless, Mr. Smith approaches the roadway, slows down, and turns right onto the roadway. Immediately after the turn, Officer Billman initiates a traffic stop. Mr. Smith's car is visible to the dashcam the entire time and is not blocked or obstructed. These facts demonstrate Mr. Smith did not commit a traffic violation for failure to yield. Because there are no cars on the roadway, Mr. Smith had no duty to yield. While the statute clearly does not require a duty to yield when there are no other cars on the roadway, even assuming it did, the dashcam shows that Mr. Smith did slow down before entering the roadway. Therefore, there can be no claim that he violated Lakewood Ordinance 331.22 or Ohio Revised Code § 4511.44. As Mr. Smith did not violate the law and ensuing detention of Mr. Smith was unlawful under the Fourth Amendment. Therefore, Mr. Smith respectfully asks this Court to suppress the evidence discovered in the search of his car.

## III.    Conclusion

The traffic stop was unlawful and violated Mr. Smith's Fourth Amendment rights against unreasonable seizures. The Court should suppress the firearm seized as fruit of that unlawful seizure.

Respectfully submitted,

STEPHEN C. NEWMAN
Federal Public Defender
Ohio Bar No. 0051928

*/s/ Jeffrey B. Lazarus*
JEFFREY B. LAZARUS
Assistant Federal Public Defender
Ohio Bar: 0079525
MICHAEL LEDENDO
Attorney at Law
Ohio Bar: 0099775
1660 West Second Street, Suite #750
Cleveland, OH 44113
(216) 522-4856 Fax: (216)522-4321
E-mail: jeffrey_lazarus@fd.org
E-mail: michael_ledenko@fd.org